IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR 21–22–BLG–SPW |
| Plaintiff, | |
| vs. | ORDER |
| RAS JAHMIKES MATTA, | |
| Defendant. | |

On July 18, 2023, Defendant Ras Jahmikes Matta filed a motion under 18 U.S.C. § 3582(c)(1)(A) to reduce his 36-month federal drug sentence. (Doc. 194; *see* Doc. 175 (Judg.).) His projected release date is October 21, 2024. *See* Inmate Locator, http://www.bop.gov/inmateloc (accessed March 5, 2024). On July 18, counsel was appointed to represent the defendant. (Doc. 195.) Appointed counsel filed an amended motion on December 18, 2023. (Doc. 203.) The government does not oppose but rather takes no position on the matter because of the complicated nature of the defendant's request and the Bureau of Prisons' ("BOP") response to the government's requests. (Doc. 207.) For the reasons stated below, the defendant's motion is granted.

1

## ANALYSIS

The First Step Act of 2018 gives district courts wide discretion to reduce an existing term of imprisonment so long as a defendant first seeks relief from the Bureau of Prisons ("BOP") and the reduction: (1) is consistent with the applicable policy statements of the Sentencing Commission, (2) takes into consideration the sentencing factors of 18 U.S.C. § 3553(a), and (3) is warranted by "extraordinary and compelling reasons." 18 U.S.C. § 3582(c)(1)(A); *United States v. Keller*, 2 F.4th 1278, 1284 (9th Cir. 2021) (per curiam).[1] Here, the defendant argues that his egregious treatment in BOP custody is an extraordinary and compelling circumstance that warrants his early release. The government takes no position on the motion but rather proposes that if the Court grants relief, he be released to a prerelease center. The defendant agrees with this suggestion. Because the defendant has demonstrated an extraordinary and compelling reason, and the § 3553(a) factors support his early release, his motion is granted.

---

[1] On November 1, 2023, the Sentencing Commission amended its policy statements to further define "extraordinary and compelling reasons." *See* 2023 Amendments to the Sentencing Guidelines, Policy Statements, and Official Commentary, First Step Act—Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A) (effective Nov. 1, 2023) (available at https://www.ussc.gov/guidelines/amendments/adopted-amendments-effective-november-1-2023). Although the amendments were not in effect when the defendant filed his pro se motion, (*see* Doc. 194), the amended motion filed by counsel was filed after the amendments took effect, (*see* Doc. 203).

## I. Exhaustion of Administrative Remedies

A defendant may only file a motion for compassionate release with the district court once he has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Here, the defendant asserts that he submitted multiple requests for relief with the warden at his facility in June 2023. (*See* Doc. 204 at 6.) No response has been received by the defendant nor his counsel, nor has the government successfully obtained the records. The defendant has therefore exhausted his administrative remedies as required by statute.

## II. Extraordinary and Compelling Reasons

The Sentencing Guidelines provide explicit examples of what constitutes an "extraordinary and compelling reason," including when a defendant was the victim of abuse by BOP officials while in custody. USSG §1B1.13(b)(4)(B). To qualify under this provision, a defendant must have been a victim of "physical abuse resulting in 'serious bodily injury' . . . that was committed by, or at the hands of, a correctional officer . . . or any other individual who had custody or control over the defendant." *Id.* "Serious bodily injury" is defined as "injury involving extreme physical pain or the protracted impairment of a function of a bodily member,

3

organ, or mental facility; or requiring medical intervention such as surgery hospitalization, or physical rehabilitation." §1B1.1 cmt. 1(M). "[T]he misconduct must be established by a conviction in a criminal case, a finding or admission of liability in a civil case, or a finding in an administrative proceeding, unless such proceeding are unduly delayed or the defendant is in imminent danger." §1B1.13(b)(4).

    The following facts are alleged by the defendant and uncontroverted by the government. On January 27, 2023, the defendant was temporarily housed at USP Atlanta while being moved between BOP facilities en route to his current designated facility, FCI Butner. The defendant was uncuffed and locked inside a large holding cell with many other inmates for several hours. After a period of a few hours, BOP officers began inciting violence against the defendant from other inmates by announcing that the defendant was an informant. The officers eventually allowed the defendant to be attacked by his fellow inmates. After that attack, two BOP officers handcuffed the defendant and removed him from the cell. The officers then "started striking [the defendant] full force in the face and the back of the head," knocking him unconscious. At this point, the defendant noticed his broken finger and asked for medical attention, although the record does not demonstrate that BOP officers broke his finger. (*See* Doc. 205-1 at 1–20.)

The government has taken "no position" on the application of this provision, because "BOP has been consulted and is presently investigating these claims, and this is the only information that can be provided." (Doc. 207 at 2.) Without conceding that these events took place as alleged by the defendant, the government writes that "this is an extremely serious allegation." (*Id.*) The government has "attempted to obtain all records associated with this incident" but "unfortunately" the BOP failed to oblige because "an active investigation into this incident is currently ongoing" that is set to be completed no sooner than April 2024. (*Id.* at 1–2.) While the government posits that its decision to take no position "is not an admission that the defendant's claims have merit," the Court must decide the defendant's motion without the government's input.

In the absence of any evidence or information to the contrary, the Court finds the abuse suffered by the defendant constitutes an extraordinary and compelling reason for early release. As the defendant's BOP medical records elucidate, he clearly suffered injuries that required medical intervention. And, as is undisputed by the government, that injury was suffered at the hands of BOP correctional officers.

Thus, the only element that defendant has not definitively proven is the Guideline requirement that the "misconduct must be established by . . . a finding in an administrative proceeding." USSG §1B1.13(b)(4). No such finding has been

made. The defendant's injuries were allegedly suffered on January 27, 2023, and he submitted an administrative claim to the BOP related to the incident on April 19, 2023. (*See* Doc. 205-1 at 46.) As of the date the government filed their response brief—January 26, 2024—the BOP had yet to complete its investigation, let alone provide any information to the parties on the investigation's progress apart from the fact that an investigation may be completed by April 2024. Although the defendant has not conclusively demonstrated that this year-long delay is undue, the government concedes that the extenuating circumstances surrounding the defendant's term of imprisonment weighs in favor early release. The defendant is set to be released from custody in October of this year; thus, waiting for a determination from BOP until April is unfair to the defendant. Given these circumstances, BOP has "unduly delayed" making an administrative finding and the defendant has demonstrated that as a victim of BOP abuse, he has an extraordinary and compelling reason for a reduction of his sentence.

## III. Section 3553(a) Factors

Even if an extraordinary and compelling reason exists to reduce the defendant's sentence, demonstrating such a reason meets only one element of § 3582(c)(1)(A). Any relief granted must be consistent with the federal sentencing objectives set forth in 18 U.S.C. § 3553(a). Pertinent factors include the "nature and circumstances of the offense and the history and characteristics of the

defendant," the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," to deter criminal conduct and protect the public, and to provide effective correctional treatment, including education or vocational training and medical care. *See* 18 U.S.C. § 3553(a)(1), (2). Courts may also consider the advisory guideline range and the need to "avoid unwarranted sentencing disparities" among similarly situated defendants. *See id.* § 3553(a)(4), (6). Here, the defendant argues that he has already served the bulk of his sentence and he has spent that time bettering himself and his prison community. The government does not address the § 3553(a) factors. Thus, the defendant's argument on this issue is considered unopposed.

In 2020, the defendant was involved in a methamphetamine distribution operation with connections to a Mexico-based drug trafficking organization. (PSR ¶¶ 9–10.) The defendant's advisory guideline range was 84 to 105 months. (PSR ¶¶ 25, 45.) The defendant was sentenced to a custodial term of 36 months, to run concurrently with Yellowstone County District Court Case No. DC 20-282, followed by 4 years of supervised release. (Doc. 175 at 2.)

The defendant has served the majority of his 36-month sentence. (*See* Doc. 205-1 at 55–56.) While in custody, he has taken advantage of many treatment and education programs offered by BOP, including courses on drug abuse, finances,

and mindfulness. (*See* Doc. 205-1 at 51–53.) According to the BOP, the defendant is a "low risk" inmate. (*Id.* at 54.) The defendant has also spent his time in custody supporting his community, as exemplified by the statement of his cellmate, Richard Balter. (*See id.* at 58.) Mr. Balter, who is blind, affirms that the defendant showed kindness and compassion to him including reading legal documents out loud and making their cell more handicap accessible. (*Id.*)

Reducing the defendant's sentence to the time he has served to date would reflect the seriousness of his offense, promote respect for the law, and fulfill the need for just punishment. *See* 18 U.S.C. § 3553(a)(2)(A)–(C). While the defendant's offense conduct is serious, decreasing his sentence by the months contemplated here would not impact whether the public would be protected from "further crimes of the defendant." *Id.* at § 3553(a)(2)(D). Thus, the 18 U.S.C. § 3553(a) sentencing factors weigh towards early release.

## IV.  Remedy

The government proposes that, if relief is granted, the defendant be released to a prerelease center given his significant criminal and substance abuse history. As conceded by the defendant, this request is reasonable because although he has a place to live upon his release, he does not have the ability to pay for that housing at this time. A prerelease center would allow him to work and save money to afford rent. Complicating matters, however, is the availability of public law placement

beds at residential reentry centers in Montana. According to BOP records, the BOP has a tentative "bed date" at the Great Falls Center in May 2024. A bed date for a public law placement, however, cannot be determined until release is granted. The most appropriate relief is therefore to grant the defendant's motion and modify the conditions of his supervision to require a prerelease placement. The Court recognizes, however, that a bed may not be available upon defendant's release. If that is the case, the prerelease center placement requirement can be removed. Ultimately, given the allegations regarding the misconduct of BOP officers described above and the defendant's good performance while in custody, release is warranted either way.

## CONCLUSION

Accordingly, IT IS ORDERED:

(1)  The defendant's motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A) (Docs. 92, 102) is GRANTED.

(2)  As of the date of this Order, the defendant's custodial sentence is REDUCED to time served.

(3)  This Order is STAYED for up to 21 days to allow the United States Probation Office time to establish a release plan, with preference for placement in a prerelease center. If and only if a prerelease placement is available, the defendant's conditions of supervision are modified pursuant to Federal Rule of

9

Criminal Procedure 32.1(c) to include the following special condition:

> You must reside in a Residential Reentry Center under contract to the United States Bureau of Prisons for a period of 180 days. You must abide by all rules and regulations of the Center and successfully complete any programming as directed by the probation officer.

(4)   The defendant shall be released as soon as a release plan is established—with preference for a prerelease placement—and appropriate travel arrangements are made. If prerelease is not available, the Probation Office must verify the defendant's residence.

(5)   If more than 21 days are needed to accomplish the defendant's release, the United States must so notify the Court and demonstrate good cause for why the stay of this Order should be extended. The unavailability of a prerelease placement will not be considered good cause.

(6)   The United States Probation Office shall review the defendant's conditions of supervised release. If further modifications are needed, the Probation Office shall notify the Federal Defenders of Montana. Counsel will be appointed to represent the defendant.

DATED this 22nd day of March, 2024.

Susan P. Watters, District Judge
United States District Court